THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES CALEBRESSI, Indicted under the Name of FRANK SEINO, and Another, Appellants.

Third Department, June 30, 1931.

*Ellsworth Baker*, for the appellants.

*Gardner LeRoy, District Attorney*, for the respondent.

HILL, J. Armed robbers entered a casino near Loch Sheldrake, Sullivan county, between twelve and one o'clock on the morning of August 19, 1928. An attempt was made by them to obtain money in the possession of the proprietor. There were about twenty-five guests present who were threatened with revolvers, several shots being fired. An employee shot one of the robbers, who died within a few days — the others escaped. These two defendants, boys seventeen or eighteen years of age, have been convicted as two of the participants. None of the guests or employees of the casino tell the number of robbers nor do they

identify these defendants. One man has already pleaded guilty to the offense.

Except for one item of proof, of little probative value, these convictions rest entirely upon the written confession of the defendant Calebressi, which he now asserts is false and was obtained through fear occasioned not only by threats of bodily harm, but by actual assaults of a brutal character made upon him by officers who had him in charge; and the claimed oral admissions of Scire, which he denies making. He also says that he was maltreated by the officers who had him in charge in an unsuccessful attempt to secure a confession. On Friday night, January 19, 1929, five months after the crime, Scire was arrested in New York city, without a warrant, and kept in the custody of police officers and detectives without arraignment until the following Monday morning. The arrest was made in the night time at the home of his parents. There are no facts stated showing the reason for making this arrest in the night at a time when he could not be immediately arraigned. Calebressi had been arrested on September 15, 1928, at about noon, and held without arraignment until the following day. The delay in arraignment in each case gave opportunity for the cruelty which the defendants say was practiced upon them. The delay in Scire's case, at least, was a violation of his rights. (Code Crim. Proc. § 165.) Police officers should be active and diligent in securing evidence and confessions, but they should obey the law. Accused persons may unjustly charge them with cruelty and there have been instances of police brutality concerning which the accused has spoken truthfully and the officer falsely. The illegal and unwarranted delay in arraignment is corroborative of the account of brutality given by each of these defendants. When Scire was arraigned after several days with the officers, he walked with a limp and appeared to be in pain. He asked for a doctor, who says he found only subjective symptoms. Scire complained to the doctor of pains in his abdomen, saying they came from the beating he had received from the officers. When Calebressi was arraigned, one eye was ecchymosed and one side of his face was bruised and swollen so that the eye was closed. The officer who arrested Calebressi belatedly accounted for the bruises, which were testified to by attorneys and a newspaper reporter, by saying that he was forced to strike Calebressi with his fist at the time of making the arrest. When this officer was first sworn, he made no mention of the claimed resistance, and his account of conversations with his prisoner belies his later assertion. Further, a second officer, who said he was present when Calebressi made the oral confession, which was later reduced to writing, testified that

he observed no marks on the prisoner's face. The record leaves no doubt about the bruised condition of this prisoner, and the testimony of the officer that it resulted from resisting arrest, given after he had heard the evidence of others who had observed and remembered the prisoner's condition, is not convincing.

The case against each of these defendants depends upon the leasing of an automobile by Scire and its return to a New York city garage at a later hour than the records of that garage indicate. It is stated by the officers that Scire, in his confession, admits that the car was returned at the later hour. It is undisputed that Scire rented an automobile at eight-fifteen in the evening of August eighteenth from a garage located on East Broadway in New York city. The People obtained from the garage and introduced in evidence the agreement between Scire and the garage in reference to the use and return of the automobile. It contained blanks for information as to the license number of the lessee-driver and of the automobile, also for the hour of the departure of the car and its return, together with the amount paid. This exhibit shows that the car was returned at one-forty-five in the morning of August nineteenth. The rental stated to have been paid was the correct amount for the use of the car until that time. Had the car been kept until one-forty-five in the afternoon of August nineteenth, as asserted by the officers, the rent would have been thirty-six dollars more. If this auto was returned to the garage at the hour stated in the exhibit, the entire theory of the prosecution fails. This exhibit was introduced in evidence by the prosecution and then impeached through the claimed oral admissions made by Scire. Neither the proprietor of the garage nor any of his employees were called as witnesses. If the amount of money paid by Scire for the use of the car is incorrectly stated in the exhibit, recourse could be had to other records showing cash receipts by the garage. The prosecution should have called the garage proprietor or manager as a witness to aid in determining whether Scire could have used this car in connection with the commission of the crime. The defense called many witnesses, establishing an apparent alibi. The conviction was had solely upon the testimony of officers whose conduct was seriously questioned. The failure to call the garage proprietor and to examine him in connection with this and any other records which he kept, leaves the case in an unsatisfactory state.

The only item of proof not connected with the confession is the testimony of a night patrolman at Liberty, a few miles from Loch Sheldrake, that he saw a Packard sedan at about four o'clock in the morning of August nineteenth. He was unable to recall

the entire license number but the first numeral and letter were "9C." One of the passengers in the car was a man by the name of Moses who later pleaded guilty to this crime. The car which Scire leased bore license number "9C–66" and was a Packard sedan. This evidence has no probative force against Scire, if the automobile which he leased was returned to the garage at the time when the People's exhibit indicates.

Upon a new trial more proof may be adduced upon each side as to the circumstances surrounding the claimed confession and admissions, and the hour of the return of the automobile to the garage from which it was hired should be definitely established. In passing, it might be observed that these defendants were indicted for robbery in the first degree, the court submitted it to the jury as an attempt at robbery, the jury returned such a verdict, but the judgment of conviction is for robbery in the first degree.

The judgments of conviction should be reversed and a new trial of each defendant had in Ulster county.

All concur.

Judgments of conviction reversed and a new trial of each defendant ordered in Ulster county.